UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-23701

A.B., a minor, by and through,
his parents and natural guardians,
C.B. and S.B.,

      Plaintiffs,

v.

CARNIVAL CORPORATION & PLC,

      Defendant.

_____/

**COMPLAINT FOR DAMAGES
AND DEMAND FOR TRIAL BY JURY**

      Plaintiffs, A.B., a minor, by and through her parents and natural guardians, C.B. and S.B., and by and through their undersigned counsel, sue Defendant, CARNIVAL CORPORATION & PLC (hereinafter "CARNIVAL"), and demand trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

      1.    A.B. seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

      2.    This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

      3.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

      4.    Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by CARNIVAL.

      5.    A.B. is *non-sui juris*, and is a resident and citizen of the state of North Carolina.

6.    C.B. and S.B. are the parents and natural guardians of A.B.

7.    C.B. and S.B. are residents and citizens of the state of North Carolina.

8.    CARNIVAL is a citizen of the state of Florida and the nations of Panama and the United Kingdom.

9.    CARNIVAL is a foreign corporation who is authorized to conduct and who does conduct business in the state of Florida, who at all times material hereto was and is doing business in Miami-Dade County, Florida, and who maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

10.   CARNIVAL, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

    a.    Operated, conducted, engaged in, or carried on a business venture; and/or

    b.    Had an office or agency; and/or

    c.    Engaged in substantial activity; and/or

    d.    Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

11.   All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## DEFINITIONS AND FACTUAL ALLEGATIONS

12.   At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject door involved in A.B.'s incident.

13.   A.B.'s incident occurred on or about September 30, 2022, while she was a fare paying passenger on CARNIVAL'S vessel, the *Sunshine*.

14.    At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, the *Sunshine*.

15.    On or about September 30, 2022, between approximately 10:30 p.m. and 11:00 p.m., A.B. was using her cabin's bathroom on the *Sunshine* during Hurricane Ian. The water was rocky/choppy, the ship was rocking violently, and it was unable to dock. As A.B. exited the bathroom, the door slammed into her right hand and crushed her thumb.

16.    As a result, A.B. sustained severe injuries that include, but are not limited to, a severely crushed thumb, possible nerve damage, and other serious injuries.

17.    At all relevant times, the dangerous and/or risk creating conditions include, but are not limited to the following:

   a.   Hurricane Ian.

   b.   The rocky/choppy water.

   c.   The violent rocking of the subject ship.

   d.   The inability of the subject ship to dock.

   e.   The subject unreasonably heavy door.

   f.   The subject unreasonably sharp door.

   g.   The subject unreasonably uncontrollable door, which was unable to be controlled by A.B. to prevent it from closing on her hand.

   h.   The subject unreasonably fast closing door, which closed on A.B.'s hand too quickly for her to prevent it from hurting her.

   i.   CARNIVAL'S weather detection system was not able to detect the subject storm and/or the severity of the storm.

   j.   CARNIVAL failed to deploy the stabilizer fins of its ship to materially reduce

the rocky/choppy movement of the ship. In the alternative, the stabilizer fins were not functioning as reasonable stabilizer fins should have, such that they were unable to materially reduce the rocky/choppy movement of the ship.

    k.  Other dangerous conditions that will be revealed through discovery.

18.  Each of these dangerous conditions alone was sufficient to and did cause A.B.'s incident and injuries, and A.B. is alleging that CARNIVAL was negligent as to each of these conditions alternatively.

19.  CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the following:

    a.  Hurricane Ian was known to be heading in the general area of the cruise in advance, such that CARNIVAL had sufficient time to prepare for and reduce the dangers of the subject storm to the subject ship and its passengers, and/or to divert, cancel, or otherwise change the subject cruise, but failed to do so.

    b.  CARNIVAL participated in the installation and/or design of the subject weather detection system, the subject stabilizer fins, the subject door, and the other dangerous instrumentalities involved in A.B.'s incident, or alternatively, CARNIVAL accepted the subject weather detection system, the subject stabilizer fins, and the subject door with their design defects present after having been given an opportunity to inspect the ship and materials on it, including the subject weather detection system, the subject stabilizer fins, and the subject door, such that CARNIVAL should have known of these design defects before using them/providing them for passenger use. The design defects include, but are not limited to, the dangers outlined in **paragraph 17(f-k)** of this complaint.

c. Both prior to and after the subject incident, CARNIVAL installed and/or refitted similar weather detection systems, stabilizer fins, and cabin bathroom doors on other ships in CARNIVAL'S fleet to make them less dangerous/insufficient.

d. There are relevant safety standards/recommendations/other guidelines regarding the safety of the subject ship during storms, as well as the subject door, including, but not limited to, such standards/recommendations/other guidelines for addressing the dangerous conditions discussed in **paragraph 17** of this Complaint, and CARNIVAL should have known of these standards/recommendations/other guidelines because whether such standards/recommendations/other guidelines are legally required for CARNIVAL to comply with or not, a fact-finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a reasonable cruise line should have done.

e. CARNIVAL also knew or should have known of these dangerous conditions through inspecting the subject storm and door involved in A.B.'s incident, and if it did not know of these dangerous conditions, this was because CARNIVAL failed to adequately inspect the subject storm and door prior to A.B.'s incident.

f. Previous persons on CARNIVAL'S cruise ships (Carnival Cruise Line, Princess Cruises, Holland America Line, Seabourn, P&O Cruises, Costa Cruises, AIDA Cruises, and Cunard) suffered incidents involving similar storms and doors, including, but not limited to *Hindsman v. Carnival Corp.*, No. 19-23536-CIV, 2020 WL 13369050, at *2 (S.D. Fla. Aug. 6, 2020) (citing *Tang v. NCL (Bahamas) Ltd.*, No. 20-cv-20967, 2020 WL 3989125, at *3 (S.D. Fla. July 14, 2020)); *Finnegan v. Carnival Corp.*, No. 09-21114-CIV, 2009 WL 2852671, at *3 (S.D. Fla. Sept. 2,

2009); *Williams v. Carnival Cruise Lines, Inc.*, 907 F. Supp. 403, 404 (S.D. Fla. 1995); *Wyler v. Holland Am. Line-USA, Inc.*, No. C02-109P, 2002 WL 32098495, at *1 (W.D. Wash. Nov. 8, 2002); *DeNicola v. Cunard Line Ltd.*, 642 F.2d 5, 6 (1st Cir. 1981); *Membreno v. Costa Crociere S.p.A.*, 425 F.3d 932, 935 (11th Cir. 2005); *Selfridge v. Carnival Corp.*, No. 20-23308-CIV, 2022 WL 796378, at *4 (S.D. Fla. Mar. 16, 2022); *Smith as Next Friend of Smith v. Carnival Corp.*, No. 04-22683-CIV, 2005 WL 8155862, at *3 (S.D. Fla. July 14, 2005) (citing *Frango v. Royal Caribbean Cruises*, 891 So.2d 1208 (Fla. 3d DCA 2005)); *Gandhi v. Carnival Corp.*, No. 13-24509-CIV, 2014 WL 1028940, at *1 (S.D. Fla. Mar. 14, 2014); *Horne v. Carnival Corp.*, No. 16-CV-21842-JLK, 2017 WL 8772503, at *1 (S.D. Fla. Dec. 4, 2017), aff'd in part, rev'd in part and remanded, 741 F. App'x 607 (11th Cir. 2018); *Butler v. Carnival Corp.*, No. 20-24025-CIV, 2021 WL 4134985, at *1 (S.D. Fla. Sept. 10, 2021); *Quashen v. Carnival Corp.*, No. 1:20-CV-22299-KMM, 2022 WL 1271982, at *1 (S.D. Fla. Jan. 6, 2022).

g.  Moreover, CARNIVAL knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery.

20.   At all times relevant, the subject weather detection system, the subject stabilizer fins, and the subject door, were unreasonably dangerous, risk-creating, defective, improperly designed, improperly installed, lacked adequate safety features, and/or otherwise unsafe.

21.   These hazardous conditions were known, or should have been known, to CARNIVAL in the exercise of reasonable care.

22.   These hazardous conditions existed for a period of time before the incident.

23.   These conditions were neither open nor obvious to A.B.

24.     At all times relevant, CARNIVAL had the ability to cure the dangers and to eliminate the danger of the conditions. However, CARNIVAL but failed to do so.

25.     At all times relevant, CARNIVAL failed to adequately inspect the subject storm, door, and the vicinity.

26.     CARNIVAL failed to adequately warn A.B. and her parents of the dangers.

27.     At all times relevant, CARNIVAL failed to maintain the subject weather detection system, the subject stabilizer fins, the subject door, and the vicinity in a reasonably safe condition. For example, CARNIVAL failed to perform regular upkeep on the subject weather detection system, the subject stabilizer fins, the subject door, such that the subject weather detection system and stabilizer fins became unreasonably non-functional/less functional, and the subject door became heavy, sharp, uncontrollable, and fast. These failures to maintain are non-exhaustive examples.

28.     At all times relevant, CARNIVAL participated in the design and/or approved the design of the subject weather detection system, the subject stabilizer fins, the subject door, and the vicinity involved in A.B.'s incident.

29.     At all times relevant, CARNIVAL participated in the installation and/or approved the installation of the subject weather detection system, the subject stabilizer fins, the subject door, and the vicinity involved in A.B.'s incident.

30.     The crewmembers of the *Sunshine* were in regular full-time employment of CARNIVAL and/or the ship, as salaried crewmembers.

31.     CARNIVAL's crewmembers, employees, and/or agents were subject to the ship's discipline and master's orders, and CARNIVAL had the right to hire and fire its crewmembers, employees, and/or agents.

32.   CARNIVAL is directly responsible and liable for their actions and the actions of its crewmembers, employees, and/or agents.

33.   The crewmembers, including the medical staff, were employees and/or actual agents and/or apparent agents of CARNIVAL, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

34.   The crewmembers were represented to A.B. and the ship's passengers as employees of CARNIVAL through signs, documents, and/or uniforms. The crewmembers were also paid a salary and/or hourly wage by CARNIVAL. CARNIVAL knew that the crewmembers represented themselves to be employees of CARNIVAL and allowed them to represent themselves as such. A.B.'s parents detrimentally relied on these representations as A.B.'s parents would not have taken A.B. on the subject cruise had they believed the crewmembers were not employees of CARNIVAL.

**COUNT I**
**NEGLIGENT FAILURE TO INSPECT**

35.   A.B. hereby adopts and re-alleges each and every allegation in paragraphs 1-25, and 30-34, as if set forth herein.

36.   CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

37.   This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately inspecting the subject storm, the subject door, and the vicinity to make sure the subject storm, the subject door, and the vicinity were reasonably safe.

38.   At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL breached the duty of reasonable care owed to A.B. and were negligent by failing to adequately inspect the subject storm, the subject door, and the vicinity to make sure

CARNIVAL'S passengers were reasonably safe from them, such that the risk creating and/or dangerous conditions discussed **paragraph 17** of the instant Complaint were unreasonably dangerous to A.B. at the time of A.B.'s incident.

39.   CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant Complaint.

40.   These risk-creating and/or dangerous conditions were caused by CARNIVAL'S failure to adequately inspect the subject storm, the subject door, and the vicinity to make sure they were reasonably safe.

41.   Furthermore, the subject incident occurred on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such the dangerous conditions were "clearly linked to nautical adventure."

42.   CARNIVAL'S negligence proximately caused A.B. great bodily harm in that, but for CARNIVAL'S negligence, A.B.'s injuries would not have occurred.

43.   As a result of CARNIVAL'S negligence, A.B. has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost earning capacity, and loss of the value of A.B.'s vacation, cruise, and transportation costs.

44.   The losses are permanent and/or continuing in nature.

45.   A.B. suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiffs, A.B., a minor, by and through her parents and natural guardians, C.B. and S.B., demand judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that A.B. will suffer and incur in the future, as a result of A.B.'s bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of the vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, lost earning capacity, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT II
## NEGLIGENT FAILURE TO MAINTAIN

46.   A.B. hereby adopts and re-alleges each and every allegation in paragraphs 1-24, 27, and 30-34, as if set forth herein.

47.   CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

48.   This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately maintaining the subject weather detection system, the subject stabilizer fins, the subject door, and the vicinity.

49.   At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to A.B. and were negligent by failing to adequately maintain the subject weather detection system, the subject stabilizer fins, the subject door, and the vicinity, such that the risk creating and/or dangerous conditions discussed **paragraph 17** of the instant Complaint were unreasonably dangerous at the time of A.B.'s incident.

50.    CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant complaint.

51.    Moreover, these risk-creating and/or dangerous conditions were caused by CARNIVAL'S failure to adequately maintain the subject weather detection system, the subject stabilizer fins, the subject door, and the vicinity.

52.    Furthermore, the subject incident occurred on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such the dangerous conditions were "clearly linked to nautical adventure."

53.    CARNIVAL'S negligence proximately caused A.B. great bodily harm in that, but for CARNIVAL'S negligence, A.B.'s injuries would not have occurred.

54.    As a result of CARNIVAL'S negligence, A.B. has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost earning capacity, and loss of the value of A.B.'s vacation, cruise, and transportation costs.

55.    The losses are permanent and/or continuing in nature.

56.    A.B. has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiffs, A.B., a minor, by and through her parents and natural guardians, C.B. and S.B., demand judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that A.B. will

suffer and incur in the future, as a result of A.B.'s bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of the vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, lost earning capacity, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT III
## <u>NEGLIGENT FAILURE TO REMEDY</u>

57.   A.B. hereby adopts and re-alleges each and every allegation in paragraphs 1-24, and 30-34, as if set forth herein.

58.   CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

59.   This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the danger of the subject storm, the subject door, and the vicinity.

60.   At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to A.B. and were negligent by failing to adequately remedy the danger of the subject storm, the subject door, and the vicinity, such that the risk creating and/or dangerous conditions discussed in **<u>paragraph 17</u>** of the instant Complaint were unreasonably dangerous at the time of A.B.'s incident.

61.   CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant Complaint.

62.   Moreover, these risk-creating and/or dangerous conditions were caused

CARNIVAL'S failure to adequately remedy the danger of the subject storm, the subject door, and the vicinity.

63.   Furthermore, the subject incident occurred on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such the dangerous conditions were "clearly linked to nautical adventure."

64.   CARNIVAL'S negligence proximately caused A.B. great bodily harm in that, but for CARNIVAL'S negligence, A.B.'s injuries would not have occurred.

65.   As a result of CARNIVAL'S negligence, A.B. has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost earning capacity, and loss of the value of A.B.'s vacation, cruise, and transportation costs.

66.   The losses are permanent and/or continuing in nature.

67.   A.B. has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiffs, A.B., a minor, by and through her parents and natural guardians, C.B. and S.B., demand judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that A.B. will suffer and incur in the future, as a result of A.B.'s bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of the vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, lost earning capacity, and loss of capacity for the enjoyment of

life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT IV
## NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITION

68.   A.B. hereby adopts and re-alleges each and every allegation in paragraphs 1-24, 26, and 30-34, as if set forth herein.

69.   At all times relevant, CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including A.B.

70.   Such duty includes, but is not limited to, the duty that CARNIVAL owes to warn passengers of any dangers that it knew or should have known were not open and obvious to A.B.

71.   Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

72.   At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to A.B. and was negligent by failing to warn A.B. of the dangerous conditions discussed in **paragraph 17** of the instant Complaint.

73.   Furthermore, CARNIVAL knew or should have known of these dangerous conditions for the reasons discussed in paragraph 19 of this Complaint.

74.   These dangerous conditions were also created by CARNIVAL.

75.   CARNIVAL failed to adequately warn A.B. despite knowing of the conditions and the danger they posed.

76.   These dangerous conditions existed for a period of time before the incident.

77.   These conditions were neither open nor obvious to A.B.

78.   CARNIVAL'S breach was the cause in-fact of A.B.'s great bodily harm in that, but

for CARNIVAL'S breach A.B.'s injuries would not have occurred.

79.    Furthermore, the subject incident occurred on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such the dangerous conditions were "clearly linked to nautical adventure."

80.    CARNIVAL'S breach proximately caused A.B. great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

81.    As a result of CARNIVAL'S negligence, A.B. has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost earning capacity, and loss of the value of A.B.'s vacation, cruise, and transportation costs.

82.    The losses are permanent and/or continuing in nature.

83.    A.B. has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiffs, A.B., a minor, by and through her parents and natural guardians, C.B. and S.B., demand judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that A.B. will suffer and incur in the future, as a result of A.B.'s bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of the vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, lost earning capacity, and loss of capacity for the enjoyment of life, for all

court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT V**
**NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT WEATHER DETECTION SYSTEM, THE SUBJECT STABILIZER FINS, THE SUBJECT DOOR, AND THE VICINITY**

84.    A.B. hereby adopts and re-alleges each and every allegation in paragraphs 1-24, and 28-34, as if set forth herein.

85.    At all times material hereto, CARNIVAL owed a duty to its passengers, and in particular a duty to A.B., not to permit dangerous conditions to be in places where they could harm passengers, such as those discussed in **paragraph 17(f-k)** in the instant Complaint, as well as to design and install reasonable safeguards.

86.    At all times material hereto, CARNIVAL participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and to put the vessel on which A.B. was injured into the channels of trade, and/or CARNIVAL approved of the subject vessel's design, including the design of the subject weather detection system, the subject stabilizer fins, the subject door, and the vicinity.

87.    At all times material hereto, CARNIVAL manufactured, designed, installed, and/or approved of the *Sunshine*, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular a duty to A.B., to design, install and/or approve of the subject weather detection system, the subject stabilizer fins, the subject door, and the vicinity without any defects.

88.    At all times material hereto, CARNIVAL through its agents and/or employees who were acting in the course and scope of their employment and/or agency with CARNIVAL, designed, installed, and/or approved of the subject weather detection system, the subject stabilizer

fins, the subject door, and the vicinity involved in A.B.'s incident, which was also in violation of the applicable industry standards/recommendations and/or other guidelines.

89.    CARNIVAL provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject weather detection system, the subject stabilizer fins, the subject door, and the vicinity.

90.    CARNIVAL maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including the *Sunshine*, during the new build process.

91.    CARNIVAL has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

92.    CARNIVAL has the right to inspect and reject design elements before taking possession of the ship.

93.    However, CARNIVAL permitted the conditions discussed in **paragraph 17(f-k)** of the instant complaint to be unreasonably dangerous without correcting these design deficiencies and did not design and install reasonable safeguards.

94.    Furthermore, CARNIVAL knew or should have known of these dangerous conditions for the reasons discussed in paragraph 19 of this Complaint.

95.    The design flaws that made the subject weather detection system, the subject stabilizer fins, the subject door, and the vicinity involved in A.B.'s incident unreasonably dangerous were the direct and proximate cause of A.B.'s injuries.

96.    CARNIVAL is liable for the design flaws of the vessel, including of the subject weather detection system, the subject stabilizer fins, the subject door, and the vicinity involved in

A.B.'s incident, which it knew or should have known of.

97.    CARNIVAL failed to correct and/or remedy the defective conditions, despite the fact that CARNIVAL knew or should have known of the danger(s).

98.    CARNIVAL'S breach was the cause in-fact of A.B.'s great bodily harm in that, but for CARNIVAL'S breach A.B.'s injuries would not have occurred.

99.    Furthermore, the subject incident occurred on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such the dangerous conditions were "clearly linked to nautical adventure."

100.    CARNIVAL'S breach proximately caused A.B. great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

101.    As a result of CARNIVAL'S negligence, A.B. has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost earning capacity, and loss of the value of A.B.'s vacation, cruise, and transportation costs.

102.    The losses are permanent and/or continuing in nature.

103.    A.B. has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiffs, A.B., a minor, by and through her parents and natural guardians, C.B. and S.B., demand judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that A.B. will suffer and incur in the future, as a result of A.B.'s bodily injury, pain and suffering, disability,

disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of the vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, lost earning capacity, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT VI**
**NEGLIGENCE FOR THE ACTS OF CARNIVAL'S CREW, STAFF, EMPLOYEES, AND/OR AGENTS, BASED ON VICARIOUS LIABILITY**

104. A.B. hereby adopts and re-alleges each and every allegation in paragraphs 1-24, and 30-34, as if set forth herein.

105. CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

106. The captain and/or other crewmembers who made the decision to sail in the subject storm, as well as to not deploy and/or otherwise insufficiently deploy the subject stabilizer fins, were agents of CARNIVAL for the following reasons:

a.      They were the staff and/or employees of CARNIVAL, or were CARNIVAL'S agents, apparent agents, and/or servants; and/or

b.      These staff, employees, and/or agents were subject to the right of control by CARNIVAL; and/or

c.      These staff, employees, and/or agents were acting within the scope of their employment or agency; and/or

d.      CARNIVAL acknowledged that these staff, employees, and/or agents would act on CARNIVAL'S behalf, and they accepted the undertaking.

107. CARNIVAL is vicariously liable for the captain and/or other crewmembers' decision

to sail in the subject storm, as well as to not deploy and/or otherwise insufficiently deploy the subject stabilizer fins.

108. Furthermore, the subject incident occurred on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such the dangerous conditions were "clearly linked to nautical adventure."

109. This negligence proximately caused A.B. great bodily harm in that, but for this negligence, A.B.'s injuries would not have occurred.

110. As a result of CARNIVAL'S negligence, A.B. has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost earning capacity, and loss of the value of A.B.'s vacation, cruise, and transportation costs.

111. The losses are permanent and/or continuing in nature.

112. A.B. has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiffs, A.B., a minor, by and through her parents and natural guardians, C.B. and S.B., demand judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that A.B. will suffer and incur in the future, as a result of A.B.'s bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of the vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, lost earning capacity, and loss of capacity for the

enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs, A.B., a minor, by and through her parents and natural guardians, C.B. and S.B., demand trial by jury on all issues so triable.

**Dated:** November 10, 2022.

Respectfully submitted,

*/s/ Matthias M. Hayashi*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
***Attorneys for A.B., a minor,***
***by and through her parents***
***and natural guardians, C.B. and S.B.***